1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHARLES DEAN,<br><br>          Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>          Defendant. | CASE NO.    C08-5112RJB-KLS<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for September 26, 2008 |

Plaintiff, Charles Dean, has brought this matter for judicial review of the denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Robert J. Bryan's review.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 64 years old.[1] Tr. 31. He graduated from high school, has a college degree in

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

bible studies, and has past work experience conducting telephone sales and helping to publish books. Tr. 97, 102, 142, 478-81.

On January 3, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as of February 28, 2002, due to post traumatic stress disorder ("PTSD") and high blood pressure. Tr. 31, 62-64, 96. His application was denied initially and on reconsideration. Tr. 31-33, 38. A hearing was held before an administrative law judge ("ALJ") on January 19, 2005, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 475-541. On April 8, 2005, the ALJ issued a decision, determining plaintiff to be not disabled because he was capable of performing his past relevant work. Tr. 19-30. On September 29, 2005, the Appeals Council denied plaintiff's request for review. Tr. 4.

Plaintiff appealed the ALJ's decision to this Court, which, on July 14, 2006, remanded the matter back to the Commissioner for further administrative proceedings. Tr. 592-602. Specifically, the Court directed the Commissioner to update plaintiff's medical records, re-evaluate the medical evidence in the record, re-assess plaintiff's credibility, apply the Commissioner's special technique for evaluating mental impairments, give proper weight to the Veterans Administration's ("VA") disability rating decision for plaintiff, and apply all appropriate steps of the Commissioner's sequential disability evaluation process. Id. Pursuant to the Court's order, on October 27, 2006, the Appeals Council remanded the matter back to the same ALJ. Tr. 603, 605-07.

On May 7, 2007, the ALJ held a second hearing at which plaintiff, again represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 787-826. On June 26, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of PTSD, mild carpal tunnel syndrome and an impingement syndrome of the left upper extremity;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

| | (4) | at step four, plaintiff had the residual functional capacity to perform medium work, with the additional limitation of only occasional contact with co-workers and the general public, which precluded him from performing his past relevant work; and |
|---|---|---|
| | (5) | at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy. |

Tr. 559-71. On January 31, 2008, the Appeals Council declined to assume jurisdiction of the case. Tr. 542; 20 C.F.R. § 404.984. The ALJ's decision therefore became the Commissioner's final decision after sixty days. Id.

On February 21, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on May 12, 2008. (Dkt. #13). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

| | (a) | the ALJ erred in evaluating the VA's disability rating decisions for plaintiff; |
|---|---|---|
| | (b) | the ALJ erred in finding plaintiff's cardiac condition to not be a "severe" impairment; |
| | (c) | the ALJ erred in evaluating the disability opinions of Scott T. Michael, Ph.D., one of plaintiff's treating psychologists; and |
| | (d) | the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy. |

For the reasons set forth below, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749

F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ Properly Evaluated the VA's Disability Rating Decision

On June 7, 1997, the VA issued a disability rating decision, which stated that "[s]ervice connection for" PTSD was being granted for plaintiff "with an evaluation of 30 percent effective December 9, 1996." Tr. 302. On January 7, 2002, the VA increased plaintiff's disability rating – which, apparently sometime subsequent to the June 7, 1997 decision, had been increased to 50 percent – to 70 percent due to his PTSD effective February 1, 2000. Tr. 307. On October 24, 2002, the VA issued a decision in which plaintiff was granted "individual unemployability" because his PTSD rendered him "unable to obtain and retain gainful employment," or, more specifically, "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." Tr. 332-33. In regard to these decisions, the ALJ found in relevant part as follows:

> . . . [M]y findings differ from those of the VA medical examiners. In January of 2002, the VA doctors increased the claimant's previous 50% disability rating to 70%, effective February 2000. . . . In October of 2002, the examiners granted "individual unemployability" due to PTSD, effective February 28, 2002. . . .
>
> A judge in a Social Security Disability case "must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, the *McCartey* court recognized that the criteria of the two agencies differed, and thus held that judges may give less weight to a VA determination when the evidence supports doing so:
>
>> Because the VA and SSA [Social Security Administration] criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he [or she] gives persuasive, specific, valid reasons for doing so that are supported by the record.
>
> *McCartey*, 298 F.3d at 1076.
>
> In this case, the different criteria used for determining disability render the Veterans Administration decisions virtually useless in my analysis. A review of the decisions shows that the VA examiners did not evaluate the claimant abilities to arrive at a function by function analysis of the claimant's functional capacity, as required by our Rulings. *See* S.S.R. [Social Security Ruling] 96-9p[, 1996 WL 374185]. In fact, the examiners and the claimant's treating psychologist did not cite to mental status examinations at all. As a result, there was limited evidence in the Veteran's Administration records regarding the claimant's functional capacity. This is significant because the claimant alleged severe problems with concentration. . . . But this complaint was not borne out on objective examination. The claimant alleged diminished concentration and short-term memory loss when evaluated by Dr. Press in June of 2003 as well. . . . Yet on mental status examination, the doctor found no significant deficit in the claimant's concentration or memory function. His immediate recall and recall after 5 minutes was 3/3. He correctly stated his date of birth and the current and past president, thus showing no deficit in past memory. The claimant correctly performed serial 3s and correctly calculated how many quarters are in $2.25.

> He was able to spell the word "world" correctly both forward and backward and to complete a 3-step command. . . . Testing of the claimant's concentration and memory show that his subjective complaints regarding deficits in these areas were not accurate. I am therefore unable to give much weight to the VA opinions, which relied on the claimant's subjective complaints – in this case inaccurate – without testing his functioning objectively.

Tr. 567-68. Plaintiff argues that in so finding, the ALJ failed to give proper weight to the VA's disability rating decisions. The undersigned disagrees.

Although a determination by the VA about whether a claimant is disabled is not binding on the Social Security Administration, an ALJ must consider that determination in reaching his or her decision. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); 20 C.F.R. § 404.1504. Further, as noted by the ALJ in this case, an ALJ "must ordinarily give great weight to a VA determination of disability." McCartey, 298 F.3d at 1076. This is because of "the marked similarity" between the two federal disability programs:

> Both programs serve the same governmental purpose--providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. . . . Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

Id. However, also as noted by the ALJ "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." Id. (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001). Here, the ALJ did so.

In challenging the ALJ's findings on this issue, plaintiff notes that in its decision determining him to be entitled to individual unemployability, the VA stated that the evidence showed his PTSD rendered him "unable to obtain and retain gainful employment" beginning on February 28, 2002, the same date he alleges he became disabled for disability benefits purposes. Tr. 333. Plaintiff argues the requirement that a claimant be able to work on a "regular and continuing basis" – i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule" (see SSR 96-8p, 1996 WL 374184 *2) – in order to be found not disabled under the Commissioner's regulations is similar to the VA's test for individual unemployability, and therefore is probative, rather than "virtually worthless," evidence of his disability as found by the ALJ. Plaintiff also

argues the ALJ mistakenly found the VA failed to arrive at a function by function analysis of his residual functional capacity as is required for disability benefits determinations.

In regard to plaintiff's first point, the fact that the VA found him to be disabled beginning on the same date he alleges to have become disabled does not necessarily add any weight to the VA's disability determination. The VA appears to have granted plaintiff individual unemployability as of that particular date because he had been working prior thereto, having reported leaving work in February 2002. Tr. 333. Indeed, in the previous disability rating decision, the VA relied on the same medical evidence to find that plaintiff was entitled to a 70 percent disability rating. Tr. 326, 333. The only difference between the two decisions seems to be plaintiff's self-report of having stopped work. See id. Since the ALJ found plaintiff to be not entirely credible (see Tr. 566-67), and this finding has not been challenged, the VA's reliance on plaintiff's own self-report does not add to the reliability of its rating decisions.

The undersigned also disagrees with plaintiff that the test for individual unemployability is similar to the definition of the term "regular and continuing basis." As noted above, "a VA rating of disability does not necessarily compel the [Social Security Administration] to reach an identical result." McCartey, 298 F.3d at 1076 (citing 20 C.F.R. § 404.1504). Section 404.1504 of the Social Security Administration's regulations provides in relevant part:

> A decision by . . . any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.

20 C.F.R. § 404.1504. Thus, because, as discussed above, "the criteria applied by the two agencies" are not identical, "[a] VA rating of total and permanent disability is not legally binding on the Commissioner." Chambliss, 269 F.3d at 522.

Plaintiff's argument is essentially that a claimant who is found unable to perform full-time work at steps four and five of the Commissioner's sequential disability evaluation process is in the same position as a veteran who is found unable to obtain and retain gainful employment, and therefore entitled to individual unemployability benefits, by the VA. This, however, is not necessarily so. For example, according to the VA's regulations, "[t]otal disability ratings for compensation may be assigned . . . when the disabled person is . . . unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities," and "all veterans who are unable to secure and follow a substantially

REPORT AND RECOMMENDATION
Page - 6

gainful occupation by reasons of service-connected disabilities shall be rated totally disabled." 38 C.F.R. § 4.16(a), (b). The VA regulations concerning disability ratings, however, do not define "substantially gainful occupation." Thus, it is not at all clear "substantially gainful occupation" has the meaning "substantial gainful activity" does in the social security disability context.[3]

In addition, the term "disability" is defined by the Social Security Act to mean the inability to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The VA regulations concerning disability ratings, on the other hand, provide that an veteran will be considered "unemployable" under the following circumstances:

> [U]pon termination of employment which was provided on account of disability, or in which special consideration was given on account of the same, when it is satisfactorily shown that he or she <u>is unable to secure further employment</u>.

38 C.F.R. § 4.18 (emphasis added). Thus, unlike in the social security context, it appears a veteran may be deemed "unemployable" if he or she cannot obtain employment.[4] <u>See</u> 20 C.F.R. § 404.1566(a) (work exists in national economy for step five sequential disability evaluation purposes when it exists in region where claimant lives or in several other regions, regardless of whether it exists in claimant's immediate area, there are specific job vacancies open, or claimant would be hired if he or she applied).

Similarly, the VA regulations concerning disability ratings also state that "[t]otal disability ratings for compensation may be assigned" if the "disabled person is . . . <u>unable to secure or follow a substantially gainful occupation</u> as a result of service-connected disabilities." 38 C.F.R. § 4.16(a) (emphasis added); <u>see also</u> 38 C.F.R. § 4.16(b) ("[A]ll veterans who are <u>unable to secure and follow a substantially gainful occupation</u> by reason of service-connected disabilities shall be rated totally disabled.") (emphasis added). In addition, those regulations provide that the disability rating:

---

[3]In contrast, "substantial gainful activity" is defined "as work that 'involves doing significant physical or mental activities' and 'is the kind of work usually done for pay or profit.'" <u>Soria v. Callahan</u>, 16 F. Supp.2d 1145, 1149 (C.D. Cal. 1997) (quoting 20 C.F.R. § 416.972(a), (b)). Work may be substantial "even if it is done on a part-time basis.'" <u>Id.</u> (quoting <u>Byington v. Chater</u>, 76 F.3d 246, 250 (9th Cir. 1996)). It is gainful "if it is the kind of work usually done for pay or profit, whether or not a profit is realized." <u>Id.</u> at 1150 (quoting 20 C.F.R. §§ 404.1572(b), 416.972(b)).

[4]This is borne out by the actual language used by the VA in finding plaintiff to be entitled to individual unemployability: "Entitlement to individual employability is granted because the claimant is unable to secure or follow a substantially gainful occupation . . . The evidence shows that his PTSD renders him unable to obtain and retain gainful employment." Tr. 333.

REPORT AND RECOMMENDATION
Page - 7

> is based primarily upon the <u>average impairment in earning capacity</u>, that is, upon the economic or industrial handicap which must be overcome <u>and not from individual success in overcoming it</u>.

38 C.F.R. § 4.15 (emphasis added). "Total disability," furthermore, "will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the <u>average person</u> to follow a substantially gainful occupation." <u>Id.</u> On the other hand, a determination of disability in the social security context clearly requires that the <u>individual</u> claimant be unable work based on his or her medically determinable impairments. <u>See, e.g.,</u> 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1520.

As to plaintiff's third point – that the ALJ was mistaken in finding the VA did not do a function by function analysis of his functional capacity as required by SSR 96-9p in light of the precise disability rating it provided – the undersigned finds the ALJ did not err here as well. It is true that the VA did precisely rate plaintiff's disability in terms of percentages (e.g., 30%, 50%, 70%, etc.), but there is no indication that such percentages correspond to the detailed and specific functional capacity findings an ALJ is required to make in determining a claimant's ability to perform work. Indeed, given the difference in the VA's approach to determining entitlement to individual unemployability discussed above, it is not even clear that a VA rating decision of 100% equates with a finding of disability under the Social Security regulations.

In addition, while the VA did discuss to some extent the medical evidence upon which it stated it relied in rating plaintiff 70 percent disabled in early January 2002, and determining him to be entitled to individual unemployability in late October 2002 – a psychological evaluation performed in late August 2000 (Tr. 441-44), and another one conducted in September 2001 (Tr. 445-49) – there is no indication in the record that it made the kind of specific findings concerning plaintiff's mental functional capabilities the ALJ was required to do pursuant to SSR 96-9p. Rather, as discussed above, the difference between the 70% disability rating and the determination of individual unemployability appears solely to have been due to plaintiff's report of stopping work in February 2002, as the medical evidence cited in both decisions was the same. This though, also as discussed above, further supports the ALJ's decision to place little weight on those decisions, given his unchallenged credibility determination in this case.

II. <u>The ALJ Did Not Err in Finding Plaintiff's Cardiac Condition to Be Non-Severe</u>

At step two of the sequential disability evaluation process, the ALJ must determine if an

impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); SSR 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

At step two, the ALJ found in relevant as follows:

> The claimant underwent two angiography surgeries with stent placement in September of 2006, after a sudden heart attack while visiting China . . . This condition appeared to have sprung up fairly suddenly, as in January of 2005, the claimant had a normal myocardial perfusion scan, with no evidence of any past heart attacks or decreased blood flow to any part of his heart. . . . As early as October of 2006, the claimant reported to a VA doctor that he felt "20 years younger" since the surgeries. He did report some chest pain. . . .That month he reported exercising very intensely. . . . By October 29, 2006, the claimant reported using a stationary bike and treadmill, playing tennis, and going to the gym. He complained of daily atypical sounding chest pain occurring randomly during the day, but in late October of 2006, the month after his myocardial infarction and surgeries, the claimant was told that he need not return to the clinic for one year. . . . The claimant later told Dr. Michael that his cardiologist had given him a "clean bill of health." . . . In February of 2007, less than a year after his heart attack, the claimant reported that he would be returning to China for a few months. . . .
>
> I therefore find that, while the claimant's heart condition was clearly a very serious impairment, it affected the claimant's functioning for a few months at most and therefore failed to meet the durational requirement. . . .

Tr. 562. Plaintiff argues the ALJ erred in so finding, asserting that the ALJ "improperly played doctor" here. (Dkt. #14, p. 12). Specifically, plaintiff asserts the ALJ erroneously inferred from the above-cited medical evidence that he could perform work at the medium exertional level full-time, notwithstanding his cardiac condition. Instead of speculating as to his ability to perform medium work, plaintiff argues, the ALJ should have asked one of his physicians to provide an opinion on this issue. In other words, plaintiff asserts the ALJ failed to fully develop the medical evidence in the record regarding the physical limitations

1  he suffered status post his cardiac surgery, but instead made his own "medical judgment" in an area
2  outside of his expertise. The undersigned disagrees.

3  It is true that an ALJ may not substitute his own opinion for the findings or opinion of a physician.
4  See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987); see
5  also McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983); Gober v.
6  Mathews, 574 F.2d 772, 777 (3rd Cir. 1978). This, however, is not what the ALJ did. Rather, he properly
7  noted the lack of evidence in the record showing plaintiff had significant work-related limitations less than
8  a year after he suffered his heart attack. See, e.g., Tr. 705, 712, 715, 720. Indeed, the record is particularly
9  devoid of any objective medical evidence of such limitations, and as set forth by the ALJ, the evidence in
10 fact shows plaintiff was fairly active, and not being restricted in any real way. That lack of any signficant
11 work-related physical restrictions in turn lends support to the limitation to medium work.

12 III.     The ALJ Properly Evaluated the Opinions of Dr. Michael

13 The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the
14 medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in
15 the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions
16 of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion
17 must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th
18 Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact
19 inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts
20 "falls within this responsibility." Id. at 603.

21 In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be
22 supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a
23 detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
24 thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the
25 evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences
26 from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

27 The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
28 either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a

1 treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific
2 and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However,
3 the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler,
4 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only
5 explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d
6 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

7 In general, more weight is given to a treating physician's opinion than to the opinions of those who
8 do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of
9 a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings"
10 or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,
11 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242
12 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the
13 opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion
14 may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id.
15 at 830-31; Tonapetyan, 242 F.3d at 1149.

16 In early November 2004, a psychiatric review technique form was completed by Scott Michael,
17 Ph.D., one of plaintiff's treating psychologists, who opined therein that plaintiff's chronic PTSD caused
18 him to have marked restrictions in his activities of daily living, and extreme difficulties in maintaining
19 social functioning and in maintaining concentration, persistence or pace, which met the criteria for
20 anxiety-related disorders in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06 ("Listing 12.06").[5] Tr.
21 464, 469. Dr. Michael further commented as follows:

22 > Were Mr. Dean to return to work, it is quite likely that the stress in the workplace
> would produce a sharp symptom increase that would lead to decompensation. In
23 > particular, his concentration problems, anger management difficulties and low stress
> coping skills would be greatly exacerbated by workplace stress, thus markedly
24 > impairing his ability to adequately perform work duties.

25 Tr. 470. At the same time, Dr. Michael completed a medical source statement of ability to do work-related

---

[5] At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098.

REPORT AND RECOMMENDATION
Page - 11

mental activities, in which he again noted many marked to extreme limitations in various mental functional areas. Tr. 473-74. Dr. Michael added the following comments as well:

> Mr. Dean's chronic Posttraumatic Stress Disorder greatly impairs his ability to work competitively. His concentration difficulties are severe enough to impair his ability to carry out the activities listed above. Also he is markedly impaired in his ability to cope with stress and is likely to have great difficulties functioning in the workplace as stress levels increase. . . .
>
> Irritability with anger outbursts feature predominantly in Mr. Dean's symptom profile, which would greatly impair his ability to interact appropriately with others in the workplace.

Id.

In late December 2006, Dr. Michael completed another psychiatric review technique form, in which he found plaintiff had no restrictions in activities of daily living, but had extreme difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, which again indicated plaintiff's PTSD met the criteria of Listing 12.06. Tr. 667. Dr. Michael further opined in relevant part:

> Mr. Dean displays a full range of PTSD symptoms . . .
>
> Of particular concern for his potential to return to work would be his anger, concentration impairment + social isolation. His anger + isolation are likely to severely impair his ability to work constructively with supervisors, coworkers, +/or employees. His concentration impairment is severe enough to make following instructions very difficult.

Tr. 662. In the medical source statement of ability to do work-related mental activities he completed at the same time, Dr. Michael also found plaintiff to have many extreme and two marked limitations in various mental functional areas, further opining that:

> Patient displays extreme concentration impairment due to chronic Post Traumatic Stress Disorder. His concentration impairment is such that it would severely impede his ability to follow more detailed instructions in the work place. . . .
>
> Patient has severe anger control difficulties related to PTSD. His anger is easily triggered by stress, such as found in work place. He is likely to have difficulties interacting with supervisors, coworkers, + the public.

Tr. 671-72. Lastly, Dr. Michael stated he based his opinions on the observations he made of plaintiff since having begun treating him in October 2002. Tr. 672.

In his decision, the ALJ addressed Dr. Michael's opinions in relevant part as follows:

> The medical expert [Dr. Arthur Lewy] testified that he also found no support in the record for more than a mild rating of concentration, persistence, or pace. He cited

REPORT AND RECOMMENDATION
Page - 12

> mental status examinations and the fact that the claimant was consistently described as an active participant in group sessions. As discussed below, the claimant's functioning in this area was never tested by Dr. Michael, and the claimant was found to have no deficits in concentration or memory when tested on consultative examination. . . .
>
> I prefer Dr. Lewy's testimony to Dr. Michael's because the claimant's psychologist appears to have recorded the claimant's complaints with little objective investigation into the basis of these complaints. The medical expert had access to the entire record, including testing and information regarding the claimant's activities, and his testimony was therefore more consistent with the bulk of the medical evidence of record than Dr. Michael's. . . .

Tr. 564. The ALJ also noted that while plaintiff had been "treated regularly" by Dr. Michael, no mental status examinations were performed. Tr. 565. In addition, the ALJ stated he was giving "very little weight to the opinion of" Dr. Michael because:

> . . . In medical source statements from November of 2004, Dr. Michael reported "marked" or "extreme" limitations in virtually every level in the areas of social and cognitive functioning. . . . In support of these ratings, the doctor cited the claimant's alleged concentration difficulties, anger management difficulties, and low stress coping skills. . . .
>
> My reasons for rejecting Dr. Michael's assessment of the claimant's functioning in these areas are the same as those discussed above for rejecting his findings on the psychiatric review technique form. . . . I prefer, instead, the opinion of the medical expert and that of Dr. [Shoshanna] Press[, M.D.], who found after a thorough examination in June of 2003 that the claimant was able to perform detailed and complex tasks, accept instruction from a supervisor, and interact appropriately with co-workers. . . .

Tr. 568.

Plaintiff argues the ALJ failed to give clear and convincing reasons for rejecting Dr. Michael's opinion that he was disabled at step three of the sequential disability evaluation process, and that he had marked or extreme mental functional limitations which would preclude competitive employment at step five. Specifically, plaintiff asserts the ALJ did not give proper weight to the opinions of Dr. Michael as those of a treating physician. Second, plaintiff asserts the ALJ was unreasonable, because he failed to adequately explain why a psychologist treating PTSD would have any cause to administer mental status examinations on an on-going basis, and failed to show that Dr. Michael's interactions with him were not appropriate in terms of the treatment he provided. Again, the undersigned disagrees.

First, while more weight is generally given to the opinions of a treating physician, as noted above, a non-examining physician's opinion may be substantial evidence if "it is consistent with other independent evidence in the record." Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149. As found

by the ALJ, the testimony of the medical expert, Dr. Lewy, (Tr. 802-09), is more consistent with the medical evidence in the record as a whole, including Dr. Michael's treatment notes. For example, other than plaintiff's own self-reports, nowhere in those notes are there any objective findings indicating the kind of marked, severe and/or extreme mental functional limitations opined by Dr. Michael. See, e.g., Tr. 193, 199, 205-06, 213-15, 219, 225-28, 356, 386, 388, 734, 749, 761, 764, 768, 777-79. Many of plaintiff's self-reports, furthermore, indicate fairly consistent and substantial progress in treatment over time, even after Dr. Michael's most recent disability opinion. See, e.g., Tr. 354, 360-64, 368-69, 373, 375, 379, 383-85, 704-05, 707, 712, 719, 742-44, 748, 757, 762-63, 772, 774-76.

Also as found by the ALJ, Dr. Lewy's testimony is more in line with the findings of Dr. Press, an examining physician, regarding plaintiff's ability to perform tasks, accept instructions from a supervisor and interact appropriately with co-workers. See Tr. 148. Even though, as noted by plaintiff, those findings may be more "remote" than Dr. Michael's, they were provided in early June 2003, well after February 28, 2002, the alleged onset date of disability. In addition, the issue here is not so much whether Dr. Michael, as a treating psychologist, is required to administer testing. Rather, in this case he gave express opinions about plaintiff's mental functional capabilities, despite the apparent lack of objective findings in support thereof. In this context, and in light of the unchallenged credibility determination, the ALJ was not remiss in trusting the other medical opinion sources in the record – such as Dr. Lewy and Dr. Press, who did rely at least in part on such testing – more than Dr. Michael.

IV. The Errors in the ALJ's Step Five Analysis Were Harmless

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only

those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ assessed plaintiff with the following residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift no more than 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds, to sit, stand, and/or walk for 6 hours in an 8-hour workday, with no limitation on pushing or pulling the above amounts. He is able to have only occasional contacts with co-workers and the general public.

Tr. 564. At the second hearing, the ALJ asked the vocational expert if there were other jobs which could be performed at the medium exertional work level, with only occasional contact with the public and co-workers. Tr. 818. In response, the vocational expert testified that such jobs would include the job of mail clerk and garment sorter, both performed at the light exertional level, and harvest worker, janitor and kitchen helper, which are performed at the medium exertional level. Tr. 818-20. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant

numbers in the national economy. Tr. 569-70.

Plaintiff argues that given his vocational profile (age, education and work experience), his ability to perform light work was irrelevant, because a claimant with the same characteristics would automatically be found unable to perform jobs at the light exertional level. The undersigned agrees. As noted by plaintiff, he was 58 years old at the time of his alleged onset date of disability, and thus was a person of "advanced age" (i.e., age 55 or older) at that time, which the ALJ also recognized. See Tr. 569; 20 C.F.R. 404.1563(e). In addition, 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(c) provides:

> . . . [F]or individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled. Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education.

Given the ALJ found that plaintiff had a high school education – in regard to which there is no indication it was completed other than in the remote past – and that the transferability of job skills was not material, he also should have found plaintiff incapable of performing the jobs of mail clerk and garment sorter. Indeed, defendant does not challenge this point.

Plaintiff, however, also argues that while the ALJ properly found there were a significant number of the other, medium exertional level, jobs the vocational expert identified, he asserts he lacks the residual functional capacity to perform those jobs given his cardiac condition. As discussed above, though, the ALJ did not err in finding that condition to be not severe. This is because the record is essentially devoid of any objective medical evidence indicating significant work-related limitations lasting for more than 12 months stemming therefrom. As such, the ALJ also did not err in finding plaintiff capable of performing the jobs of harvest worker, janitor and kitchen helper at step five.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 26, 2008**, as noted in the caption.

DATED this 29th day of August, 2008.

Karen L. Strombom
United States Magistrate Judge